[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 05-10150

———————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 5, 2005
THOMAS  K. KAHN
CLERK

D. C. Docket No. 04-00007-CR-HL-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT B. ELLIS, JR.,

Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the Middle District of Georgia

———————————————

**(August 5, 2005)**

Before TJOFLAT, PRYOR and ALARCON[*], Circuit Judges.

TJOFLAT, Circuit Judge:

———————————

[*] Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

On July 21, 2005, we vacated the defendant's sentence, remanded the case for resentencing pursuant to United States v. Booker, 543 U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and admitted the defendant to bail on the conditions on which he was admitted prior to sentencing. United States v. Ellis, 2005 WL 1705008 (11th Cir. July 21, 2005). We now explain the basis of that order.

Defendant Robert B. Ellis, Jr., is the former District Attorney for the Alapaha Judicial Circuit in Georgia. On April 14, 2004, Ellis was indicted in the United States District Court for the Middle District of Georgia, on three counts of civil rights violations, 18 U.S.C. § 242, and one count of witness tampering, 18 U.S.C. § 1512(b)(3). The indictment alleged that on three different occasions between July 2003 and February 2004, while acting under color of law, Ellis deprived Jody Manning, a defendant in a then-pending criminal case in his judicial circuit, of her due process right to bodily integrity—twice by "causing her to engage in sexual acts, resulting in bodily injury to her," and once by touching her breasts. The indictment further alleged that Ellis "corruptly persuade[d] and engage[d] in misleading conduct toward Jody Manning by telling [her] that he would prefer that she not talk to [the FBI], with the intent to hinder or prevent" the FBI's investigation of him. On May 25, 2004, a superseding indictment added a single count of making a false statement to a federal agent, 18 U.S.C. § 1001,

2

which alleged that on February 24, 2004, when asked by an FBI agent whether he had ever had sex with a woman with past or pending criminal charges in his judicial circuit, Ellis falsely answered, "No."[1]

Although Ellis maintained that his relationship with Manning was purely consensual, on August 31, 2004, he pled guilty to making a false statement to the FBI in violation of 18 U.S.C. § 1001. In exchange, the Government dismissed the remaining charges against him. The base offense level for the offense to which Ellis pled guilty was six, U.S.S.G. § 2B1.1, and Ellis's criminal history category was I, yielding a guideline range of 0-6 months' imprisonment. At the sentencing hearing, however, the district court departed upward nine offense levels under guideline section 5K2.7, which provides that "[i]f the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function." The basis for the departure was the court's determination that "a local court postponed prosecuting criminal cases in order to assess the impact and repercussions and

---

[1] The superseding indictment also amended two of the original counts to allege specifically that Ellis caused Manning to engage in sexual acts "by using force against her." These changes responded to a motion to dismiss filed by Ellis, in which he contended that the corresponding counts in the original indictment did not state offenses because they did not allege that his sexual contact with Manning was either forcible or not consensual. A second superseding indictment, filed on June 23, 2004, included no significant substantive revisions.

3

ramifications of [Ellis's] conduct and acts," and that "the integrity of the Alapaha Judicial Circuit district attorney's office and the public perception of the criminal justice system were adversely affected." With a total offense level of 15, Ellis's guideline range increased to 18-24 months' imprisonment, and the court imposed a sentence of eighteen months.[2] As of our July 21 order, Ellis had served slightly more than eight months of that sentence. Ellis's appeal challenged only the upward departure under section 5K2.7.

The error in the district court's reasoning is clear: Ellis's false statement to the FBI did not actually disrupt any governmental function. An upward departure under section 5K2.7 is not "ordinarily . . . justified" when, as here, "the offense of conviction is an offense such as bribery or obstruction of justice" because "in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference." U.S.S.G. § 5K2.7. The Government concedes that Ellis did not disrupt the FBI's investigation in the least—indeed, the agents knew that Ellis was lying when they questioned him—but it argues that an upward

---

[2] Ellis's offense level was also increased two levels for obstruction of justice, U.S.S.G. § 3C1.1, based on the conduct alleged in the witness tampering account of the original and superseding indictments, but this increase was offset by a two-level decrease for acceptance of responsibility, U.S.S.G. § 3E1.1(a).

departure is appropriate because Ellis's false statement disrupted the local criminal docket and undermined the public perception of the criminal justice system in general and the integrity of his office in particular. In other words, the collateral consequences of Ellis's false statement constitute unusual circumstances justifying an upward departure.

While the Government's theory is plausible as a general matter, it breaks down on the facts of this case, for it is clear from the record that any delay in the disposition of criminal cases in Ellis's circuit and any disgrace Ellis brought to his office or the criminal justice system are the result of Ellis's conduct toward Manning—whether consented to or not—and his subsequent indictment, not his false statement. To be sure, there was credible testimony supporting both sorts of "disruption of a governmental function," but the only reasonable inference is that these disruptions were caused by the allegations of sexual misconduct in the April 14 indictment.

The local court "postponed prosecuting criminal cases in order to assess the impact and repercussions and ramifications of [Ellis's] conduct and acts" as soon as the April 14 indictment, which did not even include the false statement count, became public. Thus, Ellis's false statement was logically irrelevant to this "disruption"; indeed, once Ellis was indicted, it did not matter what he said,

5

whether he pled guilty or stood trial, or even whether he was ultimately acquitted.

The same is true with respect to the integrity and public perception of the district attorney's office and the criminal justice system. The cause of this loss in public confidence was clearly Ellis's indictment and subsequent admission to what was, at best, a consensual sexual relationship with a criminal defendant in a case pending in his judicial circuit. It defies common sense, as well as the testimony at the sentencing hearing, to suggest that the incremental harm, if any, caused by his false statement was more than de minimis.[3]

The Government's argument relies primarily on two cases. At oral argument, the Government said that United States v. Magluta, 198 F.3d 1265 (11th Cir. 1999), was its "best case." The relevant portion of that opinion, however, was subsequently vacated, 203 F.3d 1304 (11th Cir. 2000), and vacated opinions "are officially gone. They have no legal effect whatever. They are void. [They have no] remaining force and cannot be considered to express the view of this Court." United States v. Sigma Int'l, Inc., 300 F.3d 1278, 1280 (11th Cir. 2002). Accordingly, we do not address Magluta.

_____

[3] For example, at the sentencing hearing, the interim district attorney who was appointed to replace Ellis testified that "a lot of people [he] met . . . would make jokes like . . . how many girlfriends you got, or who all are you sleeping with." But there is no evidence or reason to believe that Ellis's false statement further undermined respect for the district attorney's office or the criminal justice system.

The Government's second case is <u>United States v. Gunby</u>, 112 F.3d 1493 (11th Cir. 1997). In <u>Gunby</u>, the Chief Magistrate Judge for Baldwin County, Georgia, embezzled more than $400,000 in filing fees paid into his court and eventually pled guilty to mail fraud and tax fraud counts stemming from that scheme. <u>Id.</u> at 1496-98. In affirming an upward departure under section 5K2.7, we reasoned that "[i]f Gunby's fraudulent schemes caused the people of Baldwin County to doubt the impartiality of the magistrate court, then Gunby . . . significantly disrupted a governmental function," and "[t]he district court did not abuse its discretion in concluding that guideline section 5K2.7 encompasses this loss of confidence in government." <u>Id.</u> at 1502-03. Thus, the "loss of confidence in government" in <u>Gunby</u> was actually attributable to the fraud to which Gunby pled guilty. Here, in contrast, any disruption was caused by Ellis's misconduct toward Manning and the resulting indictment, not Ellis's false statement. Accordingly, <u>Gunby</u> does not support the Government's position.

Post-<u>Booker</u>, we continue to review the district court's application of the Guidelines just as we did pre-<u>Booker</u>: "The district court's interpretation of the sentencing guidelines is subject to de novo review on appeal, while its factual findings must be accepted unless clearly erroneous." <u>United States v. Jordi</u>, __ F.3d __, 2005 WL 1798055 (11th Cir. Aug. 1, 2005) (quoting <u>United States v.</u>

7

Pompey, 17 F.3d 351, 353 (11th Cir. 1994)).  As we explain above, the district court clearly erred if it found that Ellis's false statement caused any significant disruption of a governmental function.  Therefore, the departure cannot be sustained on that rationale.

Alternatively, if the district court believed that it could consider the disruptive effects of Ellis's indictment and conduct toward Manning, then it misinterpreted the guideline and erred as a matter of law.  A departure under guideline subpart 5K2 may be based on "conduct underlying a charge dismissed as part of a plea agreement," but only to the extent necessary "to reflect the actual seriousness of the offense."  U.S.S.G. § 5K2.21 (emphasis added).[4]  That is, such conduct provides a basis for departure only if it sheds further light on the true nature of the offense of conviction.  An upward departure based on Ellis's conduct

---

[4] Similarly, section 5K2.0(a) provides that "[t]he sentencing court may depart from the applicable guideline range if . . . there exists an aggravating or mitigating circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."  U.S.S.G. § 5K2.0(a)(1) (emphasis added).  The application notes to section 5K2.0, in turn, define "circumstance" to "include[], as appropriate, an offender characteristic or any other offense factor."  U.S.S.G. § 5K2.0 application note 1 (emphasis added).  "[T]herefore, upward departures are allowed for acts of misconduct not resulting in conviction, as long as those acts, whether or not relevant conduct in the section 1B1.3 sense, relate meaningfully to the offense of conviction."  United States v. Amirault, 224 F.3d 9, 12 (1st Cir. 2000) (emphasis added); accord United States v. Neal, 249 F.3d 1251, 1259-1260 (10th Cir. 2001).  Thus, even though section 5K2.7 refers to "significant disruption of a governmental function" that results from "the defendant's conduct," it must be understood to encompass only that conduct that "relate[s] meaningfully to the offense of conviction," rather than any "conduct" the defendant may be charged with.

toward Manning and his subsequent indictment would do nothing to reflect the "actual seriousness" of the offense to which he pled guilty; rather, it would reflect the seriousness of unproven allegations that, at least for sentencing purposes, are not meaningfully related to his false statement to the FBI. Accordingly, any collateral consequences of these allegations cannot, as a matter of law, form the basis of an upward departure under section 5K2.7.

In sum, regardless of its precise rationale, the district court committed reversible error by enhancing Ellis's sentence under guideline section 5K2.7. By our July 21 order, the defendant's sentence has been vacated and the case remanded for resentencing pursuant to United States v. Booker, 543 U.S. __, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). On remand, "[t]he district court[], while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at __, 125 S. Ct. at 767. "[B]ecause true consultation cannot be based on an erroneous understanding of the Guidelines," United States v. Crawford, 407 F.3d 1174, 1183 (11th Cir. 2005), the district must begin by calculating an advisory guideline range that does not include a section 5K2.7 enhancement. The district may then "tailor the sentence in light of other statutory concerns as well." Booker, 543 U.S. at __, 125 S. Ct. at 757.