[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 29, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10665
Non-Argument Calendar

_____

D. C. Docket No. 04-00142-CR-T-23-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILMAR PENA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 29, 2005)**

Before TJOFLAT,  BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Wilmar Pena appeals his convictions and 151-month sentence imposed for

conspiracy to possess with intent to distribute one or more kilograms of a mixture containing heroin, in violation of 21 U.S.C. §§ 841(a)(1), 864, possession with intent to distribute one or more kilograms of a mixture containing heroin, in violation of 21 U.S.C. § 841(b)(1)(A)(i), conspiracy to import into the United States one or more kilograms of a mixture containing heroin, in violation of 21 U.S.C. §§ 952(a), 963, and importing into the United States one or more kilograms of a mixture containing heroin, in violation of 21 U.S.C. § 952(a).

## I.

Pena first argues on appeal that the evidence was not sufficient to support any of his four convictions. Pena does not dispute that the substantive offenses occurred; rather, he disputes that there was sufficient evidence to show his knowledge and participation in the conspiracy to import the drugs, his knowledge and intent to possess the heroin, and his participation in the importation. We review the sufficiency of the evidence de novo, viewing the evidence and all reasonable inferences in favor of the government and the jury's verdict. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). Under this standard, we are satisfied that sufficient evidence was presented to support Pena's convictions.

The evidence sufficiently supports a conclusion that Pena agreed with Jairo Gentil to enter into the drug smuggling conspiracy to import and possess heroin

2

with intent to distribute, and that he knowingly and voluntarily participated in it by traveling from Miami to Tampa and going to a designated hotel room with the intent of taking possession of the heroin and transporting it back to Miami. The evidence showed that he (1) bought a cell phone in a fake name with money Gentil gave him; (2) traveled from Miami to Tampa, the port of entry, with the intention of picking up the delivery and take it back to Miami to hold for Gentil; (3) was to be reimbursed by Gentil for all of his expenses; (4) was told that the delivery was coming from Colombia, where Gentil was living; (5) received the phone call from Rogers to set up the delivery on the same phone that Gentil had paid for; and (6) showed up at the site where the delivery was supposed to take place with the intention of picking up the delivery

Although Pena testified that he believed that he was going to transport clothing and purses and had no knowledge of the heroin, the jury was entitled to discredit this testimony and to infer his knowledge from Rogers's testimony that he was supposed to deliver the drugs to the man who he would call after getting the phone number from his supplier, and that the delivery was supposed to take place at the hotel were Pena eventually showed up after being called. It was within the province of the jury, after reviewing the videotapes, audiotapes, and transcripts of the interaction and conversations between Pena and Rogers, as well as the

3

testimony of law enforcement officers who observed Pena conducting counter-surveillance at the hotel before going to the hotel room as well as Pena's actions in the hotel room to accept the government's version that Pena was discussing the heroin when speaking with Rogers about the delivery, and to reject Pena's testimony that he was talking about clothing and purses. The evidence supporting Pena's conspiracy convictions also supported his convictions for the substantive offenses of importation and possession of heroin with the intent to distribute.

## II

Next, Pena argues that the district court erred in refusing to declare a mistrial when a witness testified that "somebody" went to his house "with a gun" two weeks after he had spoken to Pena, inferring, Pena argues, that Pena had threatened him and his family. We review a district court's denial of a motion for a mistrial for an abuse of discretion. United States v. Wright, 392 F.3d 1269, 1274 (11th Cir. 2004), cert. denied, 125 S.Ct. 1751 (2005). "Typically, a defendant is entitled to a grant of mistrial only upon a showing of substantial prejudice." United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). "If a district court issues a curative instruction, we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition. United States v. Diaz, 248 F.3d 1065, 1101 (11th Cir. 2001) (quotation and citation omitted).

In this case, the court instructed the jury that the testimony was non-responsive to any question the witness had been asked, and the witness clarified in his testimony that he had no reason to connect Pena to the man with the gun. On this record, we cannot say that the district court abused its discretion in denying Pena's request for a mistrial.

**III**

Next, Pena argues that the district court abused its discretion by instructing the jury that they should base their verdict on consideration of all the evidence when the jury requested a copy of Pena's testimony during deliberations. He argues that the instruction would have been appropriate at the time the transcript of the testimony was actually given to the jury, but that giving the instruction prior to providing the transcripts suggested to the jury that the other evidence and testimony should be considered rather than Pena's testimony.

We review the propriety of the trial court's jury instructions de novo. United States v. Drury, 396 F.3d 1303, 1313 (11th Cir.), cert. denied, No. 04-1438, (U.S. Oct. 3, 2005). "[We] will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in a substantial way as to violate due process." United States v. Anderson, 326 F.3d 1319, 1330-1331 (11th Cir. 2003) (quotation and

5

citation omitted).  We do not find, on this record, that the jury was substantially misguided by the jury instructions as they were given.

### IV

Next, Pena argues that his sentence should be vacated pursuant to United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).Because the district court applied the Guidelines as advisory, and a  preponderance of the evidence showed that 13.2 kilograms of heroin was involved in the crimes, the district court did not err in using this factual finding to support its Guidelines calculation.

### V

Next, Pena argues that he was entitled to a reduction in his Guidelines calculation for his minor role in the offense.  The district court is obligated to consult and correctly calculate the Guidelines even though under Booker, the Guidelines are merely advisory.  United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005).  Post-Booker, we continue to review the district court's application of the Guidelines as we did pre-Booker.  United States v. Ellis, 419 F.3d 1189, 1192 (11th Cir. 2005).  We review the district court's findings regarding whether a defendant qualifies for a minor-role adjustment under the Guidelines for clear error.  United States v. Ryan, 289 F.3d 1339,  1348 (11th Cir.

2002). The defendant has the burden of establishing his role by a preponderance of evidence. Id. "So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." United States v De Varon, 175 F.3d 930, 945 (11th Cir. 1999). Under this standard, we cannot say that the district court clearly erred on this record.

## VI

Lastly, Pena argues that his sentence was unreasonable because his co-defendant, Rogers, who pleaded guilty to one count of conspiracy to import heroin with intent to distribute, was more culpable than he was and received a lesser sentence. He recognizes that this Court has held that disparate sentences among co-defendants is not an appropriate ground for departure under the Guidelines, but argues that since the Booker decision, this factor should be considered by the district court under 18 U.S.C. § 3553(a)(2)(A).

In determining whether a sentence is reasonable, the court should be guided by the factors in 18 U.S.C. § 3553(a). Booker, 125 S.Ct. at 765-66; United States v. Winingear, No. 05-11198, slip op. at 3516 (11th Cir. Aug. 30, 2005). "These factors include the available sentences, the applicable Guideline range, the nature

7

and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide the defendant with needed medical care. 18 U.S.C. § 3553(a)." Winingear, No. 05-11198, slip op. at 3516. Another factor listed in § 3553(a) is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). Although the court must be guided by these factors, we have held that "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, No. 05-11843, manuscript op. at 11-12 (11th Cir. Sept. 27, 2005).

We are satisfied that the record supports the reasonableness of Pena's 151-month sentence. The district court calculated the Guidelines range correctly, treated the Guidelines range as advisory only, and expressly stated that it had considered all of the factors in 18 U.S.C. § 3553(a), imposing a sentence that was relatively minimal in comparison to the statutory maximum life sentence.

**AFFIRMED**