[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 10, 2006
THOMAS K. KAHN
CLERK

No. 05-11294
Non-Argument Calendar

_____

D. C. Docket No. 04-00016-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN REYES,
a.k.a. Caco,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 10, 2006)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Juan Reyes appeals his 137-month sentence for conspiracy to possess with

intent to distribute and to distribute 5 kilograms or more of cocaine and 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii)(II), and (b)(1)(A)(vii). After review, we affirm.

## I. FACTUAL BACKGROUND

Reyes and a co-conspirator, Miguel Garcia, delivered approximately 2,250 grams of cocaine to a mini-storage unit. Reyes was traveling in a 1997 Buick LeSabre owned by Garcia. After leaving the storage unit, Reyes and Garcia were stopped by the Florida Highway Patrol and arrested. Reyes pled guilty to the drug conspiracy charge, admitting that, beginning in 2003, he had helped Garcia transport cocaine that he knew would later be sold.

After Reyes pled guilty, the district court conducted a sentencing hearing. During that hearing, the district court heard considerable testimony regarding Garcia's possession of a firearm during the drug conspiracy. Christopher Brown, a special agent with Immigration and Custom Enforcement ("ICE"), testified that a search of Miguel Garcia's residence revealed a loaded nine-millimeter Beretta handgun. Brown also testified, based on surveillance and mail seized during the execution of a search warrant, that Reyes was living in the Garcia residence.

Mark Strang, a special agent with the Drug Enforcement Agency ("DEA"), testified that he had monitored a conversation between Miguel Garcia and his

brother Ernesto Garcia during which they discussed a recent traffic stop involving Miguel. Miguel Garcia was asked if he had the gun with him at the time of the stop, to which he replied that the police could do nothing to him because he had a permit and that he always had the gun in the car.

Luis Cuevas, a co-conspirator, testified that Reyes was present during several drug transactions between him and Miguel Garcia. Cuevas testified that he recalled seeing a nine-millimeter handgun on the floor of Garcia's Buick LeSabre on three occasions in which Reyes was present. He testified that on these occasions both Garcia and Reyes rode together in the car. Moreover, Cuevas testified that on two occasions Garcia showed him the handgun. He also testified that Garcia had told him that he had gotten a gun license. On cross-examination, Cuevas admitted that he had not seen Reyes handle the gun and that he could not remember the exact dates when he saw the gun on the floor of the car. Also on cross-examination, defense counsel pointed out the contradiction between Cuevas's testimony that Reyes and Garcia were always together and the fact that Reyes was incarcerated from March 2001 to October 2002.

Alex Sanchez, a co-conspirator, testified that Reyes was always present with Garcia, and recalled Reyes collecting money from him upon his receipt of a marijuana shipment. Sanchez testified that he sold between 10 and 20 guns to the

3

Garcias. Furthermore, Sanchez testified that he and Miguel Garcia got into an argument in May 2002 over Sanchez's refusal to continue cutting cocaine for the Garcias, and that Miguel Garcia confronted him and gunfire was exchanged.

Based on this evidence, the district court found that Miguel Garcia possessed a firearm. The district court also found that a two-level firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) was appropriate because (1) Reyes was a member of the conspiracy at the time Garcia possessed the firearm, (2) the possession of the firearm was in furtherance of the conspiracy and (3) the possession was reasonably foreseeable to Reyes. Reyes objected to the court applying the two-level enhancement. The district court sentenced Reyes to 137 months' imprisonment. This appeal followed.

## II. DISCUSSION

On appeal, Reyes argues that the district court erred in applying the firearm enhancement.[1] Section 2D1.1(b)(1), which sets out specific offense characteristics pertaining to drug offenses, provides for a two-level increase in the base offense level "[i]f a dangerous weapon (including a firearm) was possessed . . . ."

---

[1]After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the sentencing court still must calculate the Sentencing Guidelines correctly. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Additionally, "[p]ost-Booker, we continue to review the district court's application of the Guidelines just as we did pre-Booker . . . . " United States v. Ellis, 419 F.3d 1189, 1192 (11th Cir. 2005). "We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts de novo." United States v. Gallo, 195 F.3d 1278, 1280 (11th Cir. 1999).

4

Furthermore, § 2D1.1(b)(1)'s firearm enhancement may be applied when a firearm is possessed by a co-conspirator if the government proves by a preponderance of the evidence: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." Gallo, 195 F.3d at 1284.

Reyes argues that he should not have received the firearm enhancement because the government failed to show that it was reasonably foreseeable to him that Miguel Garcia would possess a firearm.[2] We disagree. A review of the record reveals substantial evidence supporting the court's finding that Garcia's possession of the firearm was reasonably foreseeable to Reyes. First, the court heard testimony from Cuevas that on three occasions he met with Garcia and Reyes and recalled seeing a nine-millimeter handgun on the floor of Garcia's LeSabre, that Garcia and Reyes had ridden together in the car to these meetings, and that on two occasions Garcia showed Cuevas his gun.

Reyes argues that Cuevas' testimony was insufficient to support the enhancement because it was overly general and inconsistent given that Cuevas

_____

[2]On appeal, Reyes does not challenge the district court's findings that Garcia possessed the firearm, that his possession was in furtherance of the conspiracy or that Reyes was a member of the conspiracy during at the time of the possession.

5

could not account for the lengthy period of Reyes' incarceration during which Reyes was supposedly with Garcia. Although Cuevas may have been vague as to the dates he saw the gun on the floor of Garcia's car, Cuevas always maintained that Reyes was present on those occasions.

Furthermore, the district court heard testimony from others that also supported the finding that Garcia's gun possession was reasonably foreseeable to Reyes. For example, the district court heard testimony from Agent Brown that a search of Garcia's residence revealed a loaded nine-millimeter Beretta handgun and that Reyes had been living at the residence at the time the search warrant was executed. Agent Strang testified that he monitored a conversation in which Garcia stated to his brother that he had a gun permit and that he always kept the gun in his car. Finally, Sanchez testified (1) that he sold between ten and twenty guns to the Garcias, (2) that during a confrontation with Miguel Garcia in May 2002 gunfire was exchanged and (3) that Reyes always accompanied Garcia and collected drug payments for Garcia.

This evidence is clearly sufficient to support the district court's finding that Garcia's possession of the firearm was reasonably foreseeable to Reyes. Accordingly, we affirm Reyes's sentence.

**AFFIRMED.**

6