[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 18, 2006
THOMAS K. KAHN
CLERK

No. 06-10842
Non-Argument Calendar

_____

D. C. Docket No. 05-00332-CR-T-24-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCOS VALENZELA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 18, 2006)**

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Marcos Valenzela appeals his concurrent 144-month sentences for conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. § 1903(a), (g), (j), and 21 U.S.C. § 960(b)(1)(B)(ii), and possession with intent to distribute 5 kilograms or more of cocaine, in violation of 46 U.S.C. app. § 1903(a), (g), 21 U.S.C. § 960(b)(1)(B)(ii), and 18 U.S.C. § 2.  On appeal, he argues that the district court erred by denying him a minor-role reduction and by imposing an unreasonable sentence.  For the reasons set forth more fully below, we affirm.

Valenzela pled guilty to both of the above-mentioned charges.  According to the Presentence Investigation Report ("PSI"), on August 3, 2005, the United States Coast Guard, using warning shots and disabling fire, intercepted and boarded a go-fast vessel that contained over 525 kilograms of cocaine.  Following his arrest, Valenzela, who claimed Mexican citizenship, stated that he had traveled to Belize on three occasions to transport cocaine from Colombia, and that he transported cocaine for the money.  He was hired to "protect the cocaine" on the trips and was paid $10,000 in U.S. currency to protect the cocaine on the August 2005 trip.

In preparing the PSI, the probation officer held Valenzela accountable for 525 kilograms of cocaine and assigned a total offense level of 33 and a criminal

2

history category of I, which produced a Guideline imprisonment range of 135-168 months' imprisonment. No adjustment was made for Valenzela's role in the offense. Valenzela moved for a "downward departure" on the ground that he acted only as a minor participant.

At sentencing, Valenzela testified that he was not paid anything for the trip during which he was arrested, but was paid about $2,000 in expense money to travel from Mexico to Colombia. He had also made two previous trips. He was paid $20,000 for the first trip. He tried to avoid the second trip by stabbing himself in the ribs with a knife, but went after they called him and "practically forced" him to go. Valenzela explained that he did not want to go on the third trip, but was told that, after that trip, he would be paid for that trip and the second trip. Valenzela also stated that these people, at one point, hunted him down at his mother's residence. Valenzela explained that he had "practically nothing" to do on the boat. His responsibility was to safeguard the drugs, which required him just to "be there" until they arrived at their destination. He did not load the boat or participate in any sailing activities. Valenzela explained that he was paid $20,000 for the first trip and received $10,000 for the second trip, but was told that he would be paid more. He was not told how much he would be paid for the second or third trips, but he expected to receive $20,000 per trip.

Valenzela, through counsel, argued that his duties were very simple and, recognizing that he "scores out to a range of 135-plus months," asked the district court to depart to a level of 108 months' imprisonment and to consider (1) its lenient treatment of a codefendant who seemed to have a very minor role on the boat, and (2) evidence of Valenzela's attempt to avoid making a trip and the pressure put on him to go. The district court, noting that Valenzela's motion was framed in terms of a departure, denied the motion. The court noted that the amount of money Valenzela received or expected to receive – $20,000 per trip and $2,000 in expenses – and concluded that Valenzela's testimony that he really did not do anything was disingenuous. The district court adopted the Guideline calculations and facts in the PSI. After considering the advisory Guidelines and 18 U.S.C. § 3553, the district court imposed a 144-month sentence, stating that it was appropriate considering Valenzela's role in the offense and the fact that it was not the first time that Valenzela participated in such a venture.

Based primarily upon his lack of duties on the boat, as well as the fact that he was not paid for the third trip and had been subject to duress, Valenzela first argues that the district court clearly erred in not granting a minor-role adjustment. He contends that, in contravention of United States v. De Varon, 175 F.3d 930 (11th Cir. 1999) (en banc), the district court failed to consider that he was not paid

4

for the trip, had no equity interest in the drugs, and had no role in planning the criminal scheme.

We review the district court's interpretation of the Guidelines de novo and its factual findings for clear error. United States v. Ellis, 419 F.3d 1189, 1192 (11th Cir. 2005). "[A] district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." De Varon, 175 F.3d at 937.[1] "The defendant bears the burden of proving his minor role by a preponderance of the evidence." United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002). Under U.S.S.G. § 3B1.2(b), a defendant qualifies for a two-level reduction to his offense level if he was a minor participant in the offense. U.S.S.G. § 3B1.2(b). The Guidelines further define a minor participant as one "who is less culpable than most other participants, but whose role could not be described as minimal." Id., comment. (n.5).

As we clarified in De Varon, when determining whether a minor-role reduction is warranted, a district court should consider (1) whether the defendant played a minor role in relation to the relevant conduct for which he was held

---

[1] Although the government argues that our review should be for plain error because Valenzela never requested a minor-role adjustment nor questioned the district court's calculation of his offense level, we decline to decide the issue as Valenzela cannot show clear error. Cf. United States v. Nyhuis, 8 F.3d 731, 744 (11th Cir. 1993) (declining to decide if defendant waived issue by failing to raise a sufficient objection because her argument was without merit).

accountable and (2) where appropriate, the culpability of the defendant as measured against that of other participants in the relevant conduct. De Varon, 175 F.3d at 940, 944. "[W]hen a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942-43.

Here, it cannot be said that the district court clearly erred by denying Valenzela a minor-role reduction. Applying the first part of De Varon, the relevant conduct for which he was held accountable was the 525 kilograms of cocaine aboard the go-fast boat. In addition, Valenzela stated that he was hired to protect or safeguard the cocaine. In light of his testimony that he had earned $20,000 on his first trip and expected to make the same amount on each of his subsequent two trips, the district court did not clearly err in rejecting Valenzela's assertions as to his minimal role. With respect to the second part of the De Varon analysis, the only other participants discernable from the evidence and involved in the relevant conduct were the three other crew members. The PSI identified Federman Madera-Lopez as the captain of the vessel. Valenzela offered no testimony as to Rafael Puertas-Moncada and Edin Alfonso Martinez-Espita's duties on the boat. Furthermore, Valenzela expected to be paid over twice as much as Martinez-

Espita, a sea taxi driver, was offered. Furthermore, the district court "is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense," De Varon, 175 F.3d at 940. Even in the absence of an equity interest or a planning role, given the factors considered by the court, the district court's refusal to grant a role reduction was not clearly erroneous.

Based on his testimony that he was not paid for the trip on which he was arrested, had attempted to avoid a trip in the past but was "practically forced" to go, and had limited duties on the boat, Valenzela next argues that his sentence was unreasonable in light of his history and characteristics and other § 3553(a) factors. Valenzela further argues that his sentence was unreasonable because: (1) codefendant Puertas-Moncada was sentenced to 70 months' imprisonment; (2) it did not provide just punishment for the offense; and (3) his requested 108-month sentence was sufficient to comply with the purpose of § 3553(a).

We review the final sentence imposed by the district court for reasonableness.[2] United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005). The district court's imposition of a sentence is guided by the Guideline calculations and the factors outlined in 18 U.S.C. § 3553(a). United States v.

---

[2] The government again argues that our review is for plain error because Valenzela failed to object to the reasonableness of his sentence or the court's consideration of the § 3553(a) factors. As Valenzela cannot show that his sentence was unreasonable, we decline to decide this issue.

Talley, 431 F.3d 784, 786 (11th Cir. 2005).  The § 3553(a) factors take into account:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

Id.  "[T]here is a range of reasonable sentences from which the district court may choose."  Id. at 788.  While a sentence within the advisory Guidelines range is not, per se, a reasonable sentence, we ordinarily expect such a sentence to be reasonable.  Id. at 787-88.  The burden of establishing that the sentence is unreasonable in light of the record and the § 3553(a) factors lies with the party challenging the sentence.  Id. at 788.

Here, Valenzela cannot meet his burden.  Given his past participation in drug transportation and his role in the offense safeguarding the drugs, we hold that Valenzela's 144-month sentence,  towards the low end of the advisory Guideline range, was not unreasonable.  We note that, although he testified that he was not paid for the trip, Valenzela testified that he expected to be paid $20,000.  Although Valenzela testified that, at least at one point, he tried to avoid a trip but was

8

pressured to go, in a post-arrest statement, he indicated that he transported cocaine for the money. Moreover as to this final trip, Valenzela's testimony suggests that, although he did not want to go, he went for the money. Finally, the district court rejected Valenzela's testimony regarding his minimal role aboard the boat.

In light of the foregoing, the district court is

**AFFIRMED.**