United States Court of Appeals,

Eleventh Circuit.

Nos. 94-9389, 94-9394, 94-9398 and 95-8140.

UNITED STATES of America, Plaintiff-Appellee,

v.

Mario Alberto AGIS-MEZA, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Bulmaro AGIS-MEZA, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jose Alfredo NEGRETE, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Moises LOPEZ-PONCE, a.k.a. Moises Ponce Lopez, a.k.a. Antonio Jose Rodriguez, Defendant-Appellant.

Nov. 20, 1996.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:93-CR-531-5), Orinda D. Evans, Judge.

Before BARKETT, Circuit Judge, and DYER and HILL, Senior Circuit Judges.

DYER, Senior Circuit Judge:

The sole issue we consider in this appeal is whether the District Court erred in sentencing Defendants Mario Agis-Meza, Bulmaro Agis-Meza, and Jose Negrete by attributing a quantity of drugs to each defendant through extrapolating kilograms of marijuana from cash and empty wrappers seized at a "stash" house.[1]

---

[1] Several other issues have been raised in this appeal. Mario Agis-Meza and Bulmaro Agis-Meza appeal the district court's

In essence, the District Court double counted the quantity of marijuana by finding that the wrappers and the cash represented two separate illegal transactions. Because a preponderance of the evidence does not support that finding, we vacate the sentences.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case began when Emery Worldwide Freight office in Brownsville, Texas alerted United States Customs to a suspicious package addressed for delivery in Georgia. In Emery's Atlanta office, a search revealed that the package contained about seventy-eight pounds of marijuana. The package was re-sealed and prepared for a controlled delivery to 1806 Crestwood Drive, Acworth, Georgia, by a local narcotics unit. On the first delivery attempt, the agent left a notice for the addressee to contact Emery's office. On the second attempt, Donald Bourque met the agents at the house and accepted delivery of the package, whereupon he was arrested. Agents found a room key to a local Red Roof Inn motel in Bourque's pocket.

After his arrest, Bourque told the agents that a person known to him as "Compadre" (later identified as Jose Negrete), who drove a burgundy Cadillac, had paid him $1,000 and dropped him off at

decision to enhance their sentences for constructive possession of a firearm for purposes of U.S.S.G. § 2D1.1(b)(1) and denial of relief from the mandatory minimum sentence pursuant to U.S.S.G. §§ 5C1.2(2) and (5). Jose Negrete argues that the enhancement of his sentence for his role in the offense was based on insufficient evidence. Moises Lopez-Ponce asserts the district court erred in failing to reduce his sentence for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, his "minor" or "minimal" role pursuant to § 3B1.2, and in enhancing his sentence for obstruction pursuant to U.S.S.G. § 3C1.1. Our review of the record persuades us that the district court did not err and we therefore summarily affirm the court's disposition of these issues. *See* Eleventh Cir.R. 36-1.

1806 Crestwood Drive with instructions to wait for the delivery of a package. Bourque was told that "Augusto" would return for him. The agents proceeded to the Red Roof Inn where they found "Augusto," a/k/a Ariosto Cano, and a copy of the Emery Worldwide shipping order relating to the drug package. They also found in Cano's possession a piece of paper with Negrete's digital pager number.

Surveillance agents picked up the burgundy Cadillac at 1803 May Glen Court, in the same subdivision where the controlled delivery was made. They followed and eventually stopped the vehicle. The occupants were Jose Negrete, Mario Agis-Meza, Bulmaro Agis-Meza, and Negrete's wife. During a search the agents recovered cash, blank money orders, and documents identifying houses owned by Jose Negrete and his wife in the Atlanta metropolitan area located at 1806 Crestwood Drive, 1803 May Glen Court, 1817 Hickory Creek Court, and 4072 Singletree Place. Jose Negrete admitted that these properties were purchased as part of the conspiracy to store marijuana, that marijuana was stored at his house, and that his role in the conspiracy was to provide the properties and to assist the other conspirators at their request. Negrete stated also that this was the first delivery to his house, for which he was paid $1,000; on previous occasions Mario Agis-Meza and Bulmaro Agis-Meza made deliveries to either a hotel or motel.

Agents searched the other three properties owned by Jose Negrete and his wife. At 1803 May Glen Court agents found 111 pounds of marijuana packaged in twenty-eight bricks, eighty-nine

empty plastic wrappers with marijuana residue, cash totaling $362,950,[2] and four firearms. A search at 4072 Singletree Place recovered another ninety-two pounds of marijuana.

A grand jury returned an indictment charging Jose Negrete, Mario Agis-Meza, and Bulmaro Agis-Meza with conspiracy to possess marijuana, in violation of 21 U.S.C. § 846, and possession of marijuana, in violation of 21 U.S.C. § 841. The indictment also charged that Jose Negrete possessed a machine gun, in violation of 18 U.S.C. § 922(*o*), and used and carried firearms during and in relation to the drug conspiracy count, in violation of 18 U.S.C. § 924(c). Each defendant pled guilty to the drug conspiracy count and all remaining counts were dismissed.

At sentencing the district court found that the empty wrappers with marijuana residue and the $362,950 did not represent a single marijuana transaction. The court adopted the probation officer's calculation of the weight of marijuana represented by the empty wrappers and the conversion of cash to a kilogram equivalent, attributing 456 kilograms of marijuana to Jose Negrete, and 381 kilograms of marijuana to Mario Agis-Meza and Bulmaro Agis-Meza pursuant to U.S.S.G. § 2D1.1. We review the district court's determination of the quantity of drugs for clear error. *United States v. Beasley,* 2 F.3d 1551, 1561 (11th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2751, 129 L.Ed.2d 869 (1994).

## II. DISCUSSION

---

[2]According to the Presentence Investigation Report ("PSR"), the eighty-nine wrappers and the $362,950 represented approximately 161.48 and 170 kilograms of marijuana, respectively.

A sentencing court must attribute to a defendant all the drugs foreseeably distributed pursuant to a common scheme of which the defendant's offense of conviction is a part. *United States v. Lawrence,* 47 F.3d 1559, 1566 (11th Cir.1995). To determine the quantity of drugs attributable to a particular defendant, the sentencing court should make findings of fact, *id.,* which often begins with a review of the PSR. When a defendant objects to a factual finding that is to be used as a basis for sentencing, the government bears the burden to establish the disputed fact by a preponderance of the evidence. *Id. See also United States v. Andrews,* 953 F.2d 1312, 1319 (11th Cir.), *cert. denied,* 505 U.S. 1210, 1227, 112 S.Ct. 3007, 3008, 3048, 120 L.Ed.2d 882, 915 (1992) ("Due process is satisfied when relevant factors in a sentencing hearing are established by a preponderance of the evidence....") and *United States v. Patrick,* 983 F.2d 206, 208 (11th Cir.1993) ("The burden of persuasion and production ... falls upon the government as a matter of due process to establish ... each aggravating factor upon which a harsher sentence is to be based.). The preponderance of evidence is a relaxed evidentiary standard, however, it does not grant the court a license to sentence a defendant in the absence of sufficient evidence when that defendant has properly objected to a factual conclusion. *Lawrence,* 47 F.3d at 1567.

At sentencing the Defendants objected to their base offense levels, asserting that the probation officer's calculations resulted in double counting because it was reasonable to infer that the cash represented payment for the marijuana that had been

contained in the empty packages. The government therefore was required to bring forth evidence to support the position that the cash and wrappers represented two separate transactions. We thus examine whether the district court clearly erred in finding that the government proved by a preponderance of the evidence that the $362,950 was not a payment for the marijuana that had been packaged in the eighty-nine wrappers.

The district court apparently based its decision to adopt the probation officer's calculations on logic rather than evidence. At the sentencing hearing the court stated, "The amounts that the probation officer has set out in the presentence report are a snapshot of the amounts that were captured on one day, the day of Mr. Negrete's arrest, and I just don't think it's logical to think that this was the sum total of marijuana that was handled by this group." The district court did not point to any evidence from which we can even infer that the cash and the marijuana originally packaged in the eighty-nine wrappers derived from separate transactions. The PSR does not support the district court's conclusion either. The probation officer wrote, "If the currency is used to represent the sale of approximately 170 kilograms of marijuana and was found in close proximity to the empty wrappers, and the money is from the sale of the marijuana that came out of the wrappers, the correct inference to be drawn is that the currency came from the sale of the marijuana that was previously contained in the wrappers." The phrasing of this statement indicates the probation officer did not have evidence from which to draw a conclusion either way.

Nevertheless, the government contends the record supports the district court's finding because Jose Negrete admitted that more than one delivery of marijuana had been made to the Atlanta area, and that this particular delivery was the first one to his house. These admissions do not prove that the cash seized at 1806 Crestwood Drive represented payment for marijuana other than that which was contained in the specific residue-laden wrappers seized at that same address. It is just as reasonable to infer from Negrete's admissions that the $362,950 was received as payment for those eighty-nine wrappers.

Finding nothing more in the record, we hold the preponderance of evidence does not support the district court's determination of the quantity of drugs attributable to the defendants for sentencing purposes.

### III. CONCLUSION

For the foregoing reasons, we VACATE the sentences of Jose Negrete, Mario Agis-Meza, and Bulmaro Agis-Meza and REMAND their cases to the district court for resentencing.