[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11836
_____

D.C. Docket No. 2:10-cr-00140-WKW-CSC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTWOIN HARBISON,
a.k.a. Gump,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(July 10, 2013)

Before WILSON and COX, Circuit Judges, and VOORHEES,[*] District Judge.

PER CURIAM:

---

[*] Honorable Richard Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

Antwoin Harbison appeals his conviction and 180-month sentence. After a three-day trial, Harbison was found guilty of conspiring to lease, rent, use, and maintain a residence for the purpose of manufacturing, distributing, and using crack cocaine and cocaine hydrochloride in violation of 21 U.S.C. §§ 856(a)(1) and 846, conspiring to possess with the intent to distribute crack cocaine in violation of 21 U.S.C. § 846, and possession with intent to distribute 28 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, Harbison contends that the original search warrant issued violated the Fourth Amendment's particularity requirement and that the denial of his motion for mistrial based upon an alleged violation of Rule 16(a)(1)(A) constitutes reversible error. Harbison also challenges the imposition of four sentencing enhancements, namely: (1) U.S.S.G. § 2D1.1(b)(1), for possession of a firearm; (2) § 2D1.1(b)(12), for maintaining a premises for the purpose of manufacturing drugs; (3) § 3B1.1(c), for assuming a leadership role in respect to his offenses; and (4) §§ 2D1.1(e)(1) and 3A1.1(b)(1), for committing a sexual offense against, and distributing crack cocaine to, a vulnerable victim. For the following reasons, we affirm on all accounts.

I.

A.    Constitutionality of Search Warrant

We first consider whether the search warrants issued for Harbison's residence were sufficiently particular under the Fourth Amendment despite

2

inclusion of an erroneous street address.  Prior to trial, Harbison unsuccessfully moved to suppress the evidence seized during the search as well as any fruit derived from execution of the search warrants.[1]  We review a "district court's denial of a defendant's motion to suppress under a mixed standard of review, examining the district court's findings of fact for clear error and the district court's application of law to those facts *de novo*."  *United States v. King*, 509 F.3d 1338, 1341 (11th Cir.2007) (per curiam).

The physical evidence introduced at trial during the Government's case-in-chief was obtained after a search of Harbison's mobile home located in Prattville, Alabama.[2]  The search warrant described the property as "1563" while the target trailer had the number "1551" on it.  Harbison's mobile home was one of four trailers located on a lot that could only be accessed by an unpaved and unmarked dirt road off of Alabama Highway 14 in an unincorporated area of Autauga County.  At the time law enforcement sought to obtain the first search warrant,

---

[1]  Upon referral for recommended disposition of Harbison's motion to suppress, the magistrate judge found that the officers' knowledge and prior experience at the residence, combined with the description within the warrant, supported a decision upholding the search warrant as sufficiently particular.  The presiding district judge adopted the magistrate's findings and recommendation.

[2]  There were a total of three search warrants executed at Haribson's residence in connection with this investigation; the respective dates are April 9, 2010, July 9, 2010, and July 29, 2010.  All of the search warrants included the same address and physical description.  The 28 grams or more of crack cocaine charged in the indictment was seized in connection with the first search on April 9, 2010.  A smaller quantity of crack cocaine was seized in connection with the second search on July 9, 2010.

surveillance had been undertaken from a wooded area surrounding the property but law enforcement had not been able to ascertain a residence number.   Law enforcement obtained the address to include in the search warrant application from the Prattville City Map Book ("City Map Book"). The City Map Book identified the unpaved road leading from Highway 14 to the property the trailer sat on as "1563."

As a result of this discrepancy, Harbison contends that the officers were left "with no way of determining the correct trailer to search."  Specifically, Harbison claims that because the City Map Book did not identify four different trailers on the property, all allegedly similar in appearance, the physical description provided in the warrant was insufficient to remedy inclusion of the erroneous street address.[3]

Our decision in *United States v. Burke* controls. 784 F.2d 1090 (11th Cir. 1986).  In *Burke*, we explained:

> A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority. An erroneous description of premises to be

---

[3] The physical description provided in the initial search warrant read in pertinent part: "a light colored mobile home trimmed in red with a wooden front porch."  The warrant further instructed "as you turn and go up the driveway, it is the third mobile home on the left" and that "the unique feature of the trailer that clearly distinguished it from all other mobile homes on the lot – there was an aggressive pit bull chained to the wooden porch."

searched does not necessarily render a warrant invalid. The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended.

784 F.2d at 1092 (internal quotation marks omitted) (quoting *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir.1985) (finding search warrant's erroneous description − southwest versus northwest corner of building − did not invalidate warrant under particularity requirement). In *Burke*, the search warrant at issue included the wrong street address and building number, yet contained the correct apartment number as well as a physical description of the building. 784 F.2d at 1092. The *Burke* panel held that the search warrant described the premises to be searched with sufficient particularity given 1) the detailed physical description within the warrant; and 2) because the officer who had visited the premises with the confidential informant prior to seeking the warrant pointed out the exact location to the officer tasked with executing the warrant. *Id.* at 1092−1093. Under these circumstances, the warrant was sufficiently particular "to direct the officers to the correct apartment, to confine the officers' examination to that apartment, and to place the occupants on sufficient notice of the officers' authority to search the premises."[4] *Id.*, 784 F.2d at 1093.

---

[4] Harbison doesn't appear to challenge the scope of the officers' search or to contend that the search warrant failed to provide sufficient notice of the officer's authority to search.

5

Like *Burke*, the physical description of the target residence, as well as law enforcement's familiarity with the property based on surveillance, puts to rest Harbison's contention that the officers did not have sufficiently particular information. Here, prior to execution of the original search warrant, Narcotics Investigators Mark Harrell and Clint Lee briefed the Prattville Police Department's SWAT Team, whose members were tasked with executing the warrant. Harrell and Lee had participated in all phases of the investigation, including the surveillance, and were familiar with the target trailer. Harrell and Lee even drove the SWAT Team to 1563 Highway 14 West and directed SWAT where to go. As Harbison's appellate counsel conceded during argument, the search warrant in this case is properly upheld as sufficiently particular.

B.  Motion For Mistrial

We next consider whether Harbison's motion for mistrial pursuant to an alleged violation of Fed. R. Crim. P. 16(a)(1)(A) was properly denied by the district court. We review the district court's denial of a motion for mistrial for an abuse of discretion. *See United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007); *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985) (citing Fed. R. Crim. P. 33; *United States v. Russo*, 717 F.2d 545, 550 (11th Cir. 1983)).

Testifying about the circumstances surrounding execution of the second search warrant, Investigator Clint Lee stated, "[w]hile we were outside discussing

6

among the investigators whether we were going to arrest Mr. Harbison that day or seek a warrant at a later time, [Harbison] piped up and said, y'all can't make nothing stick on me." Harbison's counsel moved for a mistrial at the conclusion of Investigator Lee's testimony and argued that nondisclosure violated Rule 16 and prejudiced Harbison. The motion was denied.[5]

Because Harbison's oral statement was not subject to the mandatory pretrial disclosure requirements within Rule 16(a)(1)(A), there was no discovery violation and no abuse of discretion by the trial judge. Rule 16(a), which governs the Government's obligation to disclose information to the Defendant, reads in pertinent part:

> (1) Information Subject to Disclosure.
>     (A) Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

Fed. R. Crim. P. 16(a)(1)(A). The Government's duty to disclose an oral statement made by the Defendant is triggered by the following: 1) the oral statement is made in response to interrogation by a person Defendant knew was a government agent;

---

[5] Trial counsel failed to request any less drastic sanction or propose any curative instruction be given to the jury following Lee's testimony. In addition, when the motion for mistrial was denied, defense counsel failed to pursue the matter further.

and 2) the Government intends to use the statement at trial. *Id.* Under Rule 16, the following is not subject to disclosure:

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim. P. 16(a)(2).[6] Lee had no written notes documenting the alleged statement but reportedly informed the Government about the statement at least two weeks before trial. The Government's obligation to disclose discoverable material is a continuing duty. Fed. R. Crim. P. 16(c).

We conclude that Rule 16 did not require disclosure of Harbison's statement because the statement was made voluntarily and spontaneously as opposed to being elicited by law enforcement during interrogation. *See, e.g.*, *United States v. Taylor*, 417 F.3d 1176, 1181 (11th Cir. 2005) (per curiam) (no discovery violation under Rule 16(a)(1)(A) given that defendant's statement was not made during interrogation by government agent); *United States v. Bailey*, 123 F.3d 1381, 1399 (11th Cir. 1997) (same). Lee testified that Harbison's statement was spontaneous,

---

[6] In addition to the federal rule, the Middle District of Alabama has adopted a Local Criminal Rule 16.1 that eliminates the need for a defendant to request disclosure or file a motion to that end. *See* M.D. Ala. L.R. 16.1. The local rule simply incorporates the federal rule while attempting to build in certain efficiencies. Despite disagreement at trial, the Government concedes on appeal that Harbison was not required to make a formal request for disclosure of any statements under Local Rule 16.1.

that Harbison appeared to be directing this response to the other officers, and that he had not posed any questions to Harbison prior to the statement.

Moreover, even if the statement fell within Rule 16(a)(1)(A), Harbison is unable to show the requisite prejudice or that granting a mistrial would have been the most appropriate remedy.[7]  In considering the denial of a motion for mistrial for a different alleged violation of Rule 16, we stated:

> Violations of Rule 16 will result in a reversal of conviction only if such a violation prejudices a defendant's substantial rights. In determining the proper remedy for the government's violation of discovery rules, the Court must consider how the violation affected the defendant's ability to present a defense. Furthermore, where it is apparent . . . that [the] defense strategy may have been determined by the failure to [disclose], there should be a new trial. In other words, actual prejudice must be shown.

*United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir.1999) (alterations in original) (internal citations and quotation marks omitted) (trial judge did not abuse discretion in denying defendant's motion for mistrial for purported discovery

---

[7] Rule 16 speaks to the types of sanctions available in the event of a violation:

> (2) Failure to Comply. If a party fails to comply with this rule, the court may:
> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
> (B) grant a continuance;
> (C) prohibit that party from introducing the undisclosed evidence; or
> (D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d)(2).

violation where defendant was unable to show that failure to disclose existence of expert adversely affected ability to present a defense).

As for prejudice to the Defendant, the statement that purportedly came as a surprise to defense counsel was Harbison's own statement. More importantly, defense counsel had the opportunity to cross-examine Lee and ask in the jury's presence whether the "y'all can't make nuthin' stick" statement could have been made by someone who felt he was being wrongly accused. In terms of impact on Harbison's defense, trial counsel contended that the Government's nondisclosure prevented him from interviewing Lee's counterpart, Investigator Harrell, to test Lee's testimony against Harrell's memory and recollection. No other prejudice was asserted. Similarly, there was no objection to the prosecution's opening statement when the statement was first mentioned in the presence of the jury, which tends to show that defense counsel either knew about the statement or did not consider it significantly damaging or prejudicial.

We further note that the Government presented overwhelming independent evidence of Harbison's guilt. *See, e.g.*, *United States v. Capers*, 708 F.3d 1286, 1298 (11th Cir. 2013) (government's failure to comply with Standing Order on Discovery may be rendered harmless where there is substantial independent evidence of guilt), *petitions for cert. filed*, May 15 & June 3, 2013 (Nos. 12-10378, 12-10635). For this reason, we find that Harbison is unable to show actual

prejudice and any error with respect to admission of Defendant's statement was harmless.

## II.

With respect to his sentence, Harbison contends that four different guideline enhancements were improperly applied. We review the district court's findings of facts supporting an enhancement for clear error, and the application of the Sentencing Guidelines to those facts *de novo*.[8] *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (per curiam). "When a defendant objects to a factual finding that is to be used as a basis for sentencing, the government bears the burden to establish the disputed fact by a preponderance of the evidence." *United States v. Agis-Meza*, 99 F.3d 1052, 1055 (11th Cir. 1996). Although the preponderance standard is a relaxed evidentiary standard, it "does not grant the court a license to sentence a defendant in the absence of sufficient evidence." *Id.* We first take up those sentencing matters Harbison's counsel advanced most forcefully during argument.

### A. Drug Premises Enhancement

Harbison argues that the imposition of the Section 2D1.1(b)(12) "drug premises" enhancement constituted impermissible double-counting in light of his

---

[8] The 2011 version of the United States Sentencing Guidelines was applied in this case.

conviction under 21 U.S.C. § 856(a)(1) based upon the same underlying conduct.[9]

Effective November 1, 2010, the Guidelines provide for application of a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.  U.S.S.G. § 2D1.1(b)(12) & App. C. Amend. 748 (2010).  Our circuit has not yet had an opportunity to consider application of this enhancement in conjunction with a conviction under § 856(a)(1).

On this record, we conclude that Harbison's  § 2D1.1(b)(12) challenge is without merit.  "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."  *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309–10 (11th Cir. 1999) ("Double counting during sentencing is permissible if the Sentencing Commission intended the result, and if the result is permissible because each section concerns conceptually separate notions related to sentencing.").

Under § 2D1.1,  Harbison's base offense level was determined pursuant to his offense conduct relating to the convictions for possession of crack cocaine with the intent to distribute, and conspiracy to do the same – not conspiracy to maintain

---

[9] Defendant does not challenge the evidentiary basis for the enhancement. Even so, the Government asserts that because the only issue argued below was double-counting, any other alleged error is before us for plain error review only. *See United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000).

a premises for this purpose.  U.S.S.G. § 2D1.1.[10]    Pursuant to the Guidelines, where multiple offenses are grouped together, the defendant's base offense level is determined by the offense guideline that produces the highest offense level. U.S.S.G. § 3D1.3.  Due to § 3D1.3 grouping, Harbison's base offense level was driven by the quantity of cocaine involved rather than the maintaining a premises offense. *Id.*

Impermissible double-counting only occurs when two Guideline provisions account for the same offense conduct. Here, absent the § 2D1.1(b)(12) enhancement, Harbison's *guideline calculation* did not reflect or account for the various additional harms associated with Harbison's use of his residence to manufacture or distribute drugs.[11]    During oral argument, Harbison's counsel conceded that the statutory and guideline harms are, in fact, distinct.  Accordingly, we find that it did not constitute impermissible double-counting for the district court to apply § 2D1.1(b)(12).[12]

---

[10] Section 2D1.1 sets the applicable base offense level for defendants convicted under 21 U.S.C. § 841. In contrast, if Harbison's offense level had been calculated based on his conviction for conspiracy to maintain a premises for the manufacturing of crack cocaine, under 21 U.S.C. § 856(a), § 2D1.8 would have applied.

[11] A specific harm identified by the government during oral argument included a greater ability to conceal the drug business by operating from a residence.

[12] Although instructive as to evidentiary matters pertaining to § 2D1.1(b)(12), the supplemental authority cited by the Government does not present the precise legal issue here in that neither case considers application of the premises enhancement along with an underlying § 856 maintaining a premises conviction. *See, e.g.*, *United States v. Miller*, 698 F.3d 699, 702 (8th Cir. 2012), *cert. denied*, 133 S.Ct. 1296 (2013); *United States v. Sanchez*, 710 F.3d 724, 729–32

B.  Vulnerable Victim Enhancement

Harbison also argues that there was not a sufficient evidentiary basis for the court to enhance based upon the existence of a "vulnerable victim" pursuant to §§ 2D1.1(e)(1) and 3A1.1(b)(1).

The district court's application of § 3A1.1 presents a mixed question of law and fact, which we review *de novo*.  *United States v. Arguedas*, 86 F.3d 1054, 1057 (11th Cir. 1996).  "The district court's determination of a victim's 'vulnerability' is, however, essentially a factual finding to which we give due deference."  *Id.* Likewise, we afford "great deference" to the district court's credibility determinations at sentencing.  *United States v. Gregg,* 179 F.3d 1312, 1316 (11th Cir. 1999).

Where a defendant committed, or attempted to commit, a sexual offense against another individual by distributing, with or without that individual's knowledge, a controlled substance to that individual, an enhancement under § 3A1.1(b)(1) must be imposed by the sentencing court, subject to an exception not applicable in the instant case.[13]  *See* U.S.S.G. § 2D1.1(e)(1).

---

(7th Cir. 2013) (rejecting defendant's constitutional challenge to application of § 2D1.1(b)(12) based upon *Ex Post Facto* Clause).

[13]  Commentary to the Guidelines provides that "sexual offense" means "sexual act" or "sexual contact" as defined in 18 U.S.C. §§ 2246(2) and (3).  U.S.S.G. § 2D1.1(e)(1) cmt. n.21 (A).

14

In turn, § 3A1.1(b)(1) requires that, where "the defendant knew or should have known that a victim of the offense was a vulnerable victim," a two-level enhancement is warranted.    U.S.S.G.    § 3A1.1(b)(1).    For purposes of the vulnerable victim enhancement, a "vulnerable victim" means a person who (i) is a victim of the offense of conviction or other relevant conduct, and who (ii) is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id.* § 3A1.1 cmt. n.2.

We have previously held that, where the defendant provided drugs to a minor victim, whom the defendant knew suffered from a drug addiction, the sentencing court properly imposed a two-level vulnerable victim enhancement. *See United States v. Amedeo,* 370 F.3d 1305, 1317−18 (11th Cir. 2004) (district court's determination regarding application of § 3A1.1 is a factual finding subject to clear error review).  *Amedeo* teaches that in determining whether a § 3A1.1 vulnerable victim enhancement is applicable, it is appropriate to consider: 1)  the victim's history of drug use and / or drug addiction; 2) the defendant's awareness of the victim's drug addiction; and 3) the victim's age. *Id.*, 370 F.3d at 1317−18.

During oral argument, Harbison's counsel argued that the vulnerable victim enhancement is intended to apply, and does so typically, in the fraud context. Counsel suggested that the enhancement is properly applied in fraud cases where a vulnerable victim  such as an elderly, disabled, or handicapped person is targeted

15

for perpetration of a fraud.   While we do not dispute that § 3A1.1 applies in such circumstances, counsel is unable to distinguish application of § 3A1.1 in *Amedeo,* a drug distribution offense, from the instant case.  Moreover, we  note that other circuit courts of appeal have contemplated application of § 3A1.1 in arriving at sentences stemming from convictions for obtaining forced labor and for coercion and enticement of a minor where the victim is uniquely vulnerable as compared to the typical victim of such an offense.  *See, e.g.*, *United States v. Calimlim*, 538 F.3d 706, 716–17 (7th Cir. 2008) (upholding § 3A1.1 enhancement with conviction for obtaining forced labor); *United States v. Nielsen*, 694 F.3d 1032, 1035–37 (9th Cir. 2012) (remanding on § 3A1.1 enhancement  in context of conviction for coercion and enticement of minor where district court did not identify a specific factor that made the victim uniquely vulnerable; expressly stating that the decision does not preclude application of § 3A1.1 in other coercion and enticement cases).

Counsel next argued, without reference to any authority, that a victim's voluntary use of  a controlled substance necessarily weighed against application of the enhancement.  We reject this position as well.  Section 2D1.1(e)(1) of the Guidelines contemplates that application of the vulnerable victim enhancement is appropriate where a controlled substance is made available (distributed) to the

16

intended victim of a sexual offense *with or without the victim's knowledge*. *See* U.S.S.G. § 2D1.1(e)(1).

The district court's factual findings concerning application of § 3A1.1(b)(1) are not clearly erroneous. Here, the district court properly found that (1) the female victim smoked crack cocaine, whether voluntary or involuntarily; (2) Harbison committed a sexual offense against her; and (3) she was especially vulnerable, given her age, the age difference between the victim and Harbison, and the victim's drug-induced impairment. Harbison essentially asks for a re-weighing of the evidence, arguing that testimony of witnesses he proffered contradicted the victim's written statements and, therefore, preclude application of the enhancement.[14] However, we afford deference to the district court's weighing of the conflicting evidence in the first instance, and we note that the court was entirely reasonable in crediting the medical report, which documented extensive injuries consistent with sexual assault. In fact, Harbison did not dispute at sentencing the notion that the sexual acts committed were not consensual. Harbison instead posited that the preponderance of the evidence did not establish that Harbison was the perpetrator of a sexual assault. The district court was within its perogative and did not err in applying the enhancement.

---

[14] The victim did not testify at sentencing. However, according to the representations of the Government and the sentencing judge, the medical evidence presented concerning the victim's physical condition following the assault was presented as showing conclusively that there was non-consensual sexual contact.

17

C.  Firearm Enhancement

Next, Harbison argues that the district court erred in applying  the firearm enhancement because, after three thorough searches of his home, a firearm was never found.

Under § 2D1.1(b)(1), a defendant's offense level increases by two levels "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a drug offense.  U.S.S.G. §  2D1.1(b)(1).  This two-level increase applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  *Id.* § 2D1.1, n. 11 (A).

The government must show that "the firearm was present at the site of the charged conduct" or that "the defendant possessed a firearm during conduct associated with the offense of conviction."  *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).  Once the government meets this burden, the evidentiary burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was "clearly improbable."  *Id.*

The government need not introduce evidence that a firearm was ever physically found in order to meet its initial burden.  *See United States v. Audain,* 254 F.3d 1286, 1289 (11th Cir. 2001) (§ 2D1.1 enhancement supported by a preponderance of the evidence where government witness testified that defendant carried  a  firearm  and  defendant  did  not  attempt  to  discredit  the  witness's

18

testimony).    Instead, circumstantial evidence may prove that the defendant possessed a firearm in connection with his offense. *Id.*

Here, although Harbison's home was searched on three occasions and a firearm was never found, it was not clear error for the court to find that the enhancement applied, given that: (1) his codefendant, Curtis Lamar Powell, who lived at Harbison's home while he committed the instant offenses, told police that he saw a black and silver firearm in the home during that time; (2) a separate source told police that there were weapons inside of the home; (3) police found a magazine and ammunition in the home that were generally consistent with the codefendant's description of the firearm; and (4) the magazine and ammunition were found in Harbison's bedroom specifically.

Given the district court's finding that Harbison possessed the firearm, the burden then shifted to Harbison to show that it was clearly improbable that the firearm was connected to his offenses.  Harbison did not present any evidence or arguments below to support such a finding.

D.  Aggravating Role Enhancement

Harbison also argues that the district court's application of the aggravating role enhancement was not supported by a preponderance of the evidence.

Pursuant to § 3B1.1(c), the sentencing court must apply a two-level enhancement where the defendant was an organizer, leader, manager, or supervisor

19

in a sufficiently extensive drug conspiracy.  U.S.S.G. § 3B1.1(c).  Although fronting drugs to another does not automatically make a defendant a supervisor, "the assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement."  *United  States v. Jiminez*, 224 F.3d 1243, 1251 (11th Cir. 2000) (upholding the enhancement where a co-conspirator had to consult with the defendant before agreeing to sell drugs).

Here, it was not clearly erroneous for the sentencing court to find that Harbison was an organizer, leader, or manager in relation to his offense conduct. Contrary to Harbison's argument on appeal, he more than merely fronted drugs to others.  His codefendant, Curtis Powell, testified at trial that: (1) Harbison was the sole provider of crack cocaine to him; (2) he sold the drugs out of Harbison's home at Harbison's direction; and (3) he used Harbison's customers at first until he developed his own, but continued to give proceeds of the sales back to Harbison. At  several intervals of his testimony at trial, Powell indicated that he assisted Harbison in the sale of drugs and that Harbison directed the sales.

D.  Harmless Error

Finally, the sentencing judge explicitly stated that he would have imposed the same sentence notwithstanding Harbison's challenge to the various enhancements.  In explaining the reasonableness of the 180 month sentence, the sentencing judge stated he would so find "irrespective of whether [Harbison's]

guideline range fell within 151 to 188 months," and that given the evidence presented, "frankly, [he] would have varied up to [180 months] had [he] sustained some of [Harbison's] objections." For this reason, any misapplication of the enhancement(s) was harmless error at best. *See United States v. Keene*, 470 F.3d 1347, 1350 (11th Cir. 2006) (otherwise reasonable sentence upheld despite possible misapplication of § 2B3.1(b)(2)(F) enhancement where district court had already stated it would impose exactly the same sentence absent application of the enhancement).

**AFFIRMED.**