[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16544
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cr-00014-MMT-CHW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS ESPINOZA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(November 19, 2013)

Before CARNES, Chief Judge, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Carlos Espinoza appeals his 30-month sentence for misprision of a felony, see 18 U.S.C. § 4, presenting four contentions:  (1) the district court erred by varying upward from the recommended guidelines range in order to avoid an unwarranted sentencing disparity between Espinoza and his codefendants; (2) the district court erred by imposing an upward departure based on dismissed or uncharged conduct without evidence in the record supporting its findings; (3) the district court erred in finding that the underlying conspiracy involved ice methamphetamine and not standard methamphetamine; and (4) the district court erred by ignoring, without making any findings, the government's motion under United States Sentencing Guidelines § 5K1.1.

## I.

In early 2011, local law enforcement learned that "ice" had hit the streets of Thomaston, Georgia.  The report was not a weather advisory.  Ice is an especially pure form of methamphetamine.[1]  It goes by other names:  "Tina," "glass," "crank," and perhaps most commonly "crystal meth."[2]  The feds started an investigation, and by the summer of 2011 they had a wiretap on the phone of Brian Kilby, the lead distributor in Thomaston.  The agents learned that Kilby's ice was

---

[1] "[I]ce is to methamphetamine as crack is to cocaine: the free-base, concentrated, smokeable form of the parent compound."  Robert M. Julien, A Primer of Drug Action: A Comprehensive Guide to the Actions, Uses, and Side Effects of Psychoactive Drugs 214 (10th ed. 2005).

[2] Steven J. Lee, Overcoming Crystal Meth Addiction: An Essential Guide to Getting Clean 15 (2006).

2

not home cooked. He got his supply by taking weekly trips to Atlanta to buy from Ruben Hernandez — Carlos Espinoza's associate and roommate. Through the wire, the agents intercepted multiple calls in which Kilby and Hernandez set up buys. They also intercepted two calls between Kilby and Espinoza on July 7 and July 8. In both calls Kilby told Espinoza he was returning "the stuff" because it was "no good." In the second call, Espinoza asked if Kilby had gathered up all of "the stuff," and Kilby told him that some was gone.

The agents decided to make a move after hearing Kilby schedule a buy with Hernandez for July 27, 2011. They arranged for Spaulding County Sheriff Officers to stop Kilby on the highway back from Atlanta. When those officers pulled Kilby over, they found 56.7 grams of ice in his car. Kilby admitted that the ice was his and that he had been buying from Hernandez for about a year. He also told the agents that Espinoza had been associating with Hernandez for three or four months, but that Kilby preferred to deal with Hernandez because he was not comfortable with Espinoza.

The next week, the agents obtained a search warrant for Hernandez and Espinoza's apartment in Atlanta. When they entered the apartment, the agents found Hernandez in the kitchen, pouring ice down the garbage disposal. They found Espinoza in the bedroom, apparently not doing anything incriminating (the record does not provide any detail other than Espinoza's location). Despite

3

Hernandez's disposal efforts, the agents seized four grams of ice from the apartment, along with scales and $5,060 in cash.[3]

A federal grand jury indicted Espinoza, Hernandez, Kilby, and ten others on one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), and § 846.[4]  Kilby and Hernandez pleaded guilty to the original charge.  Espinoza bargained for a lesser charge, agreeing to plead guilty to misprision of a felony in violation of 18 U.S.C. § 4.[5]  Instead of admitting to full-fledged conspiracy, Espinoza admitted that he had knowledge of the conspiracy and that he took some affirmative act to conceal or participate in the conspiracy.  See Itani v. Ashcroft, 298 F.3d 1213, 1216 (11th Cir. 2002) (explaining the elements of misprision of a felony).  Specifically, he stipulated that (1) he had participated in the two phone calls about Kilby returning "the stuff"; (2) he "was aware of the transactions between Kilby and Hernandez," yet "he failed to notify the appropriate civil authorities"; and (3) "for determining the drug amount as relevant conduct," his "sentence will be based on two (2) ounces of methamphetamine."  The third stipulation ensured a lower sentencing

---

[3] While four grams may not seem like much in an absolute sense, four grams of ice yields between twenty and one hundred hits.  See Randi Mehling, Methamphetamine (Drugs: The Straight Facts) 41 (David J. Triggle ed., 2008).

[4] Of the ten other codefendants, two pleaded guilty to the original charge, six pleaded guilty to some form of lesser offense, and two had all charges dismissed.

[5] Misprision is one of the linguistic vestiges of the days following the Norman Conquest when English courts used "law French."  See generally The Letter of the Law: Legal Practice and Literary Production in Medieval England 9 (Emily Steiner & Candace Barrington eds., 2002).

guideline calculation for Espinoza because the base offense level is higher for ice than for standard methamphetamine.  See U.S.S.G. § 2D1(c)(4), (7).  In return the government agreed to issue a superseding indictment charging misprision of a felony, dismiss the original conspiracy charge against Espinoza, and file a motion for sentence reduction under U.S.S.G. § 5K1.1 if Espinoza provided substantial assistance.

That seemed like a great deal for Espinoza.  When defendants plead guilty to misprision of a felony, their initial offense level is set by subtracting 9 levels from the base offense level of the underlying felony.  See U.S.S.G. § 2X4.1.  Because the base offense level for conspiracy with intent to distribute 2 ounces (56.7 grams) of methamphetamine is 26, Espinoza's PSR calculated a base offense level of 17. It then subtracted 3 levels for acceptance of responsibility under § 3E1.1, resulting in a total offense level of 14.  Because he had no prior convictions, Espinoza had a criminal history score of 0 and a criminal history category of I.  Thus Espinoza's guidelines range was 15 to 21 months, significantly shorter than the guidelines range of 87 to 108 months he would have faced under the original conspiracy charge.  The PSR noted, however, that an upward departure under U.S.S.G. § 5K2.21 and an upward variance under 18 U.S.C. § 3553(a)(6) might be warranted.

5

Espinoza raised three objections to the PSR.  First, he objected to the PSR "to the extent it could lead the Court to conclude that [he] had a bigger role in the operation than is borne out by the evidence shown in the pre-trial discovery material and in the Stipulation of Facts."  Second, he objected to two statements in the PSR asserting that Espinoza was "being groomed" or was "training" to replace Hernandez.  Third, he objected to the PSR's statement that "Kilby contacted Hernandez and Espinoza" to set up the July 27 buy.  The probation officer removed the three contested statements from the PSR.

The plea deal turned out to be less of a bargain than Espinoza expected. Though the district court accepted the PSR's guidelines calculation and the government filed a motion for a § 5K1.1 reduction, the court concluded that a longer sentence was warranted.  First, it found that an upward variance was justified under § 3553(a)(6) to avoid an unwarranted sentencing disparity between Espinoza and his codefendants.  Second, it found that an upward departure was justified under § 5K2.21 to reflect the actual seriousness of Espinoza's offense. The district court thus settled on a 30-month term of imprisonment — nine months higher than the top of the guidelines range calculated in the PSR.

## II.

We review sentencing decisions only for an abuse of discretion, using the two-step method outlined in Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586,

597 (2007). First, we review the procedural soundness of the decision, checking to ensure, among other things, that the district court has not miscalculated the guidelines range, treated the guidelines as mandatory, failed to consider the § 3553(a) factors, selected a sentenced based on clearly erroneous facts, or failed to adequately explain the chosen sentence — including any deviation from the guidelines range. United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009). Next, we assess the "substantive reasonableness" of the decision given the totality of the circumstances, "including the extent of any variance from the Guidelines range." Id. (quotation marks omitted). In making the second inquiry, we do not presume that sentences outside the guidelines are unreasonable, but we can consider the extent of the variance in making our assessment. Id.

### A.

The district court committed procedural error by imposing an upward variance under 18 U.S.C. § 3553(a)(6) without identifying a defendant similarly situated to Espinoza. The court explained that it had "compared [Espinoza] to the other defendants in this case and similarly situated defendants." In its estimation, there needed to be "an adjustment to avoid an unwarranted sentence disparity." The court did not provide any further explanation as to why there was an unwarranted disparity between Espinoza and his codefendants.

Section 3553(a)(6) allows sentencing courts to vary from the guidelines range when there is a "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The provision applies only when "apples are being compared to apples." United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (quotation marks omitted). So there can be no basis for a variance under § 3553(a)(6) without a comparable "apple." That requires identifying (1) a specific defendant, (2) with a similar record to the defendant being sentenced, (3) who has been found guilty of similar criminal conduct. See United States v. Jayyousi, 657 F.3d 1085, 1117–18 (11th Cir. 2011).[6] Without a comparator that satisfies those three criteria, there cannot be a comparison of sentences under § 3553(a)(6). See United States v. Martin, 455 F.3d 1227, 1241 (11th Cir. 2006) (refusing to compare sentences without "a valid comparator for § 3553(a)(6) purposes").

The district court failed to identify a valid § 3553(a)(6) comparator. While we can infer that the court was comparing Espinoza with Hernandez and Kilby, there are no findings by the district court establishing that they had similar criminal records and had been convicted of similar offenses. Omitting such basic facts leaves a reviewing court with "no indication or explanation as to how [the

---

[6] Of course, the defendant being sentenced can be compared to more than one potential comparator, and they need not be his codefendants. See, e.g., United States v. Irey, 612 F.3d 1160, 1219–21 (11th Cir. 2010) (en banc) (comparing the defendant being sentenced to several defendants in different cases).

defendant's] sentence serves the needs described in § 3553(a)(6)." United States v. Livesay, 525 F.3d 1081, 1094 (11th Cir. 2008) (vacating and remanding where the sentencing court "did not offer any comparison" between the two comparators and the defendant).  The district court therefore committed procedural error in imposing an upward variance under § 3553(a)(6).

B.

The district court committed another procedural error by imposing an upward departure under U.S.S.G. § 5K2.21 based on clearly erroneous factual findings.  Section 5K2.21 says that sentencing courts:

> may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.

Underlying conduct may justify a departure under this provision "only if it sheds further light on the true nature of the offense of conviction." United States v. Ellis, 419 F.3d 1189, 1193 (11th Cir. 2005).  Conduct relating to "collateral" events is irrelevant. Id.

The district court's rationale for departing under § 5K2.21 is somewhat ambiguous.  We produce its entire explanation for the reader's sake, emphasizing the portions on which the parties' arguments focus.

9

I'm somewhat conflicted here.  You pled guilty to a charge of mispris[i]on.   I do not feel that that adequately reflects your involvement in this offense, even accepting that you might have come in on the tail end of this as documented in the presentence report.

You certainly were involved in the events that occurred in the apartment when the raid was going on and ice was being disposed of. You certainly were involved in the events, the transaction after which Mr. Kilby was stopped and found with over 50 grams of ice.

I am obligated to consider your role compared to the other defendants in this case and similarly situated defendants.  I do think pursuant to 18 U.S.C., Section 3553(a)(6) there does need to be an adjustment to avoid an unwarranted sentence disparity.

I also consider that pursuant to Guideline U.S.S.G. 5K2.21 dismissed and uncharged conduct can be considered with regard to an upward departure if the Court feels that the new charge does not adequately reflect the actual seriousness of the offense that was addressed in the underlying charge.

While the mispris[i]on guideline involves the use of the drug table, and we discussed quantities and there's still some confusion about what the quantities were based on apparently, it gives you the benefit of nine-level reduction which you would not have received if convicted of a drug offense.

Had you been charged with the ice that we actually have in this case, in all likelihood -- if your quantities had been based upon that, in all likelihood you may have been facing a 10 year mandatory minimum given the quantities involved.  You have benefited greatly from the plea agreement here.  I will accept it, but I am going to depart upward.  Based on everything I've said, Mr. Espinoza, I commit you to the Bureau of Prisons for a period of 30 months.

(emphasis added.)

Both Espinoza and the government read the district court's decision as justifying its § 5K2.21 departure based on both of the underlined passages.  Under their reading, the district court's rationale was that the plea agreement did not reflect the seriousness of Espinoza's offense conduct — both in terms of the

10

actions he took and the kind of methamphetamine involved — so an upward departure was warranted. The parties' reading is plausible given that the district court declared that the sentence was "[b]ased on everything [it] said," and the fact that the court did not expressly tie its decision to depart upward to any one particular finding. See United States v. Webb, 139 F.3d 1390, 1394–95 (11th Cir. 1998) (interpreting the district court's ambiguous sentencing explanation by adopting the rationale that "the record more strongly suggests"). We therefore will take it as given that the district court decided to depart upward based on its findings that Espinoza was involved in the disposal of the ice in Hernandez's apartment and the sale of the 56.7 grams of ice to Kilby on July 27, as well as its finding that the underlying conspiracy involved ice.

That first set of findings, that Espinoza was involved in the disposal of ice in Hernandez's apartment and the sale of 56.7 grams of ice to Kilby on July 27, was clearly erroneous. A district court's factual findings at sentencing must be, at a minimum, based on "substantial evidence." United States v. Ellisor, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008). That requires some external source supporting the district court's finding, such as "evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004). While a district court may make factual findings by drawing reasonable inferences from the facts

11

in the record, the facts must support those inferences — conclusory leaps in logic are impermissible.  See United States v. Spriggs, 666 F.3d 1284, 1288–89 (11th Cir. 2012); United States v. Agis-Meza, 99 F.3d 1052, 1055 (11th Cir. 1996).

There was inadequate support for the court's finding that Espinoza was involved in disposing of the ice in Hernandez's apartment and selling the 56.7 grams of ice to Kilby.  First, the revised PSR did not contain facts that would allow the district court to infer that Espinoza was involved in either action.  It simply said that "Espinoza was located in one of the bedrooms" when agents entered Hernandez and Espinoza's apartment.  Nothing in the report indicated that Espinoza was helping Hernandez dispose of the ice.  Similarly, the revised report said that Kilby spoke with Hernandez when arranging the buy on July 27 that led to his arrest leaving Atlanta.  It never mentioned Espinoza in connection with that buy.  The district court's findings were an inferential bridge too far.  See Agis-Meza, 99 F.3d at 1055.

Second, Espinoza objected specifically to the PSR's statement that he was involved in the sale of the 56.7 grams to Kilby (which prompted the probation officer to remove the statement), and he objected generally to the implication that he participated in the conspiracy beyond the two phone calls with Kilby about returning "the stuff."  The government therefore had the burden to prove, by a preponderance of evidence, that Espinoza participated in the disposal of ice in

12

Hernandez's apartment and the sale of the 56.7 grams to Kilby. See United States v. Martinez, 584 F.3d 1022, 1027 (11th Cir. 2009). The district court could not find that he committed either action based on the revised PSR alone. Id. And the government failed to produce any testimony at the hearing or point to any evidence in the record suggesting that Espinoza was involved in either act.

The district court's findings thus lacked the requisite "substantial evidence." See Ellisor, 522 F.3d at 1273. And its reliance on those findings in imposing an upward departure under § 5K2.21 was procedural error.

## III.

We will not decide the other issues that Espinoza raises as they are either unnecessary to resolve this appeal or outside our jurisdiction. First, Espinoza challenges the substantive reasonableness of his sentence. Because we are vacating the sentence and remanding the case for further proceedings, we need not evaluate the substantive reasonableness of the vacated sentence. See, e.g., United States v. Gupta, 572 F.3d 878, 888 (11th Cir. 2009). Second, Espinoza challenges the district court's finding that the conspiracy, which served as the underlying felony for his misprision of a felony charge, involved ice instead of standard methamphetamine. The district court's finding was part of its decision to impose an upward variance, which the court will need to revisit on remand after correcting the procedural errors we have identified. We thus leave it to the district court in

13

the first instance to determine what additional support for its findings, if any, is necessary to address the concerns Espinoza raises on appeal.  See United States v. Sawyer, 115 F.3d 857, 860 (11th Cir. 1997) (deciding to "leave resolution of the defendant's request to more fully address the issue of acceptance of responsibility to the discretion of the district court" where the sentence was already being vacated and remanded).

Finally, Espinoza argues that the district court erred in denying the government's § 5K1.1 motion.  We lack jurisdiction to review that decision because the district court was not under an erroneous belief that it lacked the statutory authority to depart from the guidelines range.  See United States v. Willis, 649 F.3d 1248, 1258–59 (11th Cir. 2011).

The sentence is VACATED and the case is REMANDED to the district court for further proceedings consistent with this opinion.