[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-12067

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

THOMAS JOE OBREGON,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:22-cr-00005-MCR-1

————————————————

Before ROSENBAUM, JILL PRYOR, and BLACK, Circuit Judges.

PER CURIAM:

Thomas Obregon appeals his 210-month sentence for possession with the intent to distribute heroin, possession with the intent to distribute more than 100 grams of heroin, possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm as a convicted felon. Obregon asserts the district court erred in attributing narcotics seized during uncharged conduct to him as "relevant conduct" for his two counts of conviction for possession with intent to distribute, because the evidence was insufficient to connect those drugs to him. He also contends the district court erred in attributing the drugs to him because they were not part of the same course of conduct or common scheme or plan as the offense of conviction. After review,[1] we affirm.

## I. DISCUSSION

A.    *The connection between charged and uncharged conduct*

Where a defendant objects to a factual finding that is used to calculate his guideline range, the Government bears the burden of establishing the disputed fact by a preponderance of the evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). "The preponderance of evidence is a relaxed evidentiary standard, however, it does not grant the court a license to sentence a defendant in the absence of sufficient evidence when that defendant has

---

[1] We review for clear error the district court's application of the relevant-conduct guideline in U.S.S.G. § 1B1.3 to the facts of a case. *United States v. Valladares,* 544 F.3d 1257, 1267 (11th Cir. 2008).

properly objected to a factual conclusion." *United States v. Agis-Meza*, 99 F.3d 1052, 1055 (11th Cir. 1996).

The district court may consider uncharged conduct in determining an appropriate sentence. *United States v. Rushin,* 844 F.3d 933, 942 (11th Cir. 2016). In determining the applicable base offense level for a given offense, the Guidelines dictate that a court shall consider any relevant conduct, including, among other things, "all acts and omissions . . . committed by the defendant that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A).

The district court did not clearly err in finding, under the preponderance of the evidence standard, the evidence was sufficient to attribute the drugs found at Laurie Drive to Obregon for the purpose of sentencing under the relevant-conduct guideline of § 1B1.3. First, Obregon's cell phone contained text messages from July 2020 in which he discussed the distribution of both heroin and fentanyl with Jessica Stepp, who lived at Laurie Drive. The phone also contained text conversations between Obregon and other people directing them to Laurie Drive, referencing drugs, and telling them when he would be at Laurie Drive. One conversation he had with Stepp referenced a person named "Rock," whose name then appeared on the "owe sheet" that was found near the drugs recovered from the living room in Laurie Drive.

As to the drugs themselves, the blue pills seized at Laurie Drive were consistent with the photograph of blue pills found on Obregon's cell phone, and the pills that were bought from him during a controlled buy at the Long Lake Drive residence. Additionally, two of Obregon's counts of conviction were for possession

with intent to distribute heroin, and heroin was also seized from Laurie Drive.

Obregon had also stayed at Laurie Drive, as personal documents of his were found in the bedroom occupied by Kathryn Day, specifically a state of Florida search warrant from 2016 that named Obregon, an account sheet from the Florida Department of Corrections from when Obregon was incarcerated, and a dry-cleaning receipt with Obregon's name and phone number, dated June 24. Further, Officer Landis testified that Obregon was living at Laurie Drive until numerous people from his distribution network were arrested, after which he moved.

Thus, the district court did not clearly err in finding, by a preponderance of the evidence, that this evidence was sufficient to connect the drugs seized at Laurie Drive to Obregon as relevant conduct and attribute those drug quantities to Obregon for the purposes of sentencing.

B.     *Same course of conduct or common scheme or plan*

Section 1B1.3(a)(2) of the Sentencing Guidelines provides that, for offenses grouped under U.S.S.G § 3D1.2(d), the defendant must be held accountable for all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The commentary following § 1B1.3 makes clear that relevant conduct may include uncharged conduct:

> Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range. . . . [I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction

> are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

U.S.S.G. § 1B1.3, comment. (backg'd). "The commentary also makes clear that § 1B1.3 is designed to take account of 'a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing.'" *United States v. Maxwell*, 34 F.3d 1006, 1010 (11th Cir. 1994). However, when illegal conduct exists in discrete, identifiable units apart from the offense of conviction, the Sentencing Guidelines anticipate a separate charge for that conduct. *Id.* at 1010-11.

The commentary also provides that, "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor," such as a common purpose, common victims, common accomplices, or similar *modus operandi*. U.S.S.G. § 1B1.3, comment. (n.5(B)(i)). The commentary also provides offenses may qualify as part of the same course of conduct if they are sufficiently connected or related to each other so as to draw the conclusion they are part of a single episode, spree, or ongoing series of offenses. *Id.*, comment. (n.5(B)(ii)). While we have never specifically held a court must look to the similarity, regularity, and temporal proximity between the offense of conviction and the uncharged conduct, as other circuits have, our cases "are in accord with such a holding." *Maxwell*, 34 F.3d at 1011. Thus, we have analyzed these factors in a case involving the connection between the counts of conviction involving the distribution of drugs and an uncharged drug offense. *Id.* (citations omitted). The commentary provides where one of

the above factors—similarity, regularity, and temporal proximity—is absent, a stronger presence of at least one of the other factors is required. U.S.S.G. § 1B1.3, comment. (n.5(B)(ii)).

We do not "think that two offenses constitute a single course of conduct simply because they both involve drug distribution," because:

> to describe [the defendant's] conduct at such a level of generality as to eviscerate the evaluation of whether uncharged criminal activity is part of the 'same course of conduct or common scheme or plan' as the offense of conviction. With a brushstroke that broad, almost any uncharged criminal activity can be painted as similar in at least one respect to the charged criminal conduct.

*Maxwell*, 34 F.3d at 1011 (quoting *United States v. Mullins*, 971 F.2d 1138, 1145 (4th Cir. 1992)). For example, we have held the distribution of an additional 546 grams of cocaine was not relevant conduct under § 1B1.3(a)(2) to counts of conviction involving a dilaudid distribution scheme. *Id.* at 1011-12.

Regardless of the applicable standard of review,[2] Obregon's argument the attributed drugs were not part of the same course of

---

[2] The Government asserts this claim should be reviewed under plain-error review, as Obregon did not raise an argument before the district court regarding the same course of conduct. Obregon contends the same course of conduct argument is another argument in support of the same legal challenge to the application of the relevant-conduct guideline, and his argument is preserved. We need not decide which standard of review applies because Obregon's argument fails even under a higher standard of review. *See Maxwell*, 34 F.3d at 1011 (stating we will reverse only if we determine the district

22-12067               Opinion of the Court                    7

conduct or a common scheme or plan is meritless, as there was a clear connection between the drugs seized during the two traffic stops underlying his counts of conviction and the drugs seized from a stash house that he and other individuals used to traffic narcotics. Obregon argues that, while his counts of conviction and the uncharged Laurie Drive conduct share a common purpose of the intent to distribute heroin, they do not share common victims, accomplices, or *modus operandi*. Although the specific circumstances of the offense conduct underlying his two counts of conviction—the discovery of heroin in his vehicle during two traffic stops—is distinct from the circumstances of the uncharged conduct—the seizure of various narcotics from a stash house—it is clear from Obregon's text messages to Stepp and other parties that he was using the Laurie Drive residence to further his drug-trafficking operation. Obregon also argues only the Laurie Drive conduct involved fentanyl, but this argument omits the fact that 191.48 grams of heroin were found in the living room and 0.339 grams of heroin were found in Day's bedroom, and thus heroin is common between the counts of conviction and the uncharged conduct. While this Court does not assume two offenses constitute a single course of conduct simply because both involve drug distribution, it is clear from the record the district court was not relying solely on the fact the counts of conviction involved distribution of heroin, but rather relied on the text messages between Obregon and other parties, the "owe sheet" found near the drugs at Laurie Drive, and Obregon's personal documents found at Laurie Drive, to establish

---

court clearly erred in considering conduct that exists as discrete and identifiable units apart from the offense of conviction as part of the same course of conduct or part of common scheme or plan).

a connection between his offense conduct and the attributed relevant conduct. *Maxwell*, 34 F.3d at 1011.

Obregon also asserts there is no clear temporal connection between his counts of conviction and the uncharged conduct, with nearly four months passing between the search of Laurie Drive and the first search of his car, and nearly a year between the first search of his car and the next search. The commentary to § 1B1.3, however, does not provide any requirements for timing of the relevant conduct, but rather only requires offenses to be sufficiently connected to draw the conclusion they are part of the same series of ongoing offenses. U.S.S.G. § 1B1.3 comment. (n.5(B)(ii)). Further, even if the temporal proximity were absent, the degree of similarity of the offenses could support a finding the counts of conviction and uncharged conduct were part of the same course of conduct, as the record provides evidence Obregon was trafficking drugs on an ongoing basis, specifically heroin, and thus the uncharged conduct was part of a common scheme with his counts of conviction.[3]

## II. CONCLUSION

The district court did not err in attributing the drugs seized at Laurie Drive to Obregon for the purposes of sentencing.

**AFFIRMED.**

---

[3] As Obregon fails to show any error regarding a common scheme, we need not reach his related contention that the Government cannot show the claimed error was harmless.